```
-----------------------------------X-----------------------------
LINDA BUIE                         :UNITED STATES DISTRICT COURT
                                   :EASTERN DISTRICT OF NEW YORK
              Plaintiff(s),        :
                                   :   CASE No.:12 CV 4390
     against                       :
                                   :   CIVIL ACTION
                                   :
THE CITY OF NEW YORK,              :
DET.KEITH A.MCDOWELL(Shield# 1381),:   AMENDED COMPLAINT
DET. TODD CRACCO (Shield# 2359),   :
DET. ORLEN ZAMBRANO (Shield# 02727):
JOHN DOE and JANE DOE 1-2          :   PLAINTIFF DEMANDS
                                   :   TRIAL BY JURY
                                   :
                                   :   (RJD)(CLP)
              Defendant(s).        :
-----------------------------------X-----------------------------
```

TAKE NOTICE, the Plaintiff, Linda Buie, hereby appears in this action by her attorneys, The Law Offices of O'keke & Associates, P.C., and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, Linda Buie, by her attorneys, The Law Offices of O'keke & Associates, P.C., complaining of the defendants, The City of New York, Det. Keith A. McDowell(Shield# 1381), Det. Todd Craco (Shield# 2359), Det. Orlen Zambrano (Shield# 02727), John Doe and Jane Doe 1 through 2, collectively referred to as the Defendants, upon information and belief alleges as follows:

## **NATURE OF THE ACTION**

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2.  The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.  All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

4.  As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

5.  All conditions precedent to the filing of this action have been complied with. This action, pursuant to the Federal Rules of Civil Practice and all applicable rules and laws, has been commenced within Three years after the happening of the event upon which the claim is based.

## PARTIES

6.  Plaintiff resides in Brooklyn, New York and is a resident of the State of New York.

7.  The actions which form the underlying basis for this case all took place in the County of Kings, within the jurisdiction of the Eastern District of New York.

8.  Defendants, Det. Keith A. McDowell(Shield# 1381), Det. Todd Cracco (Shield# 2359), Det. Orlen Zambrano (Shield# 02727), John Doe and Jane Doe 1 through 2, are all known and unknown police officers for the City of New York, acting under color of state law. They are being sued in both their individual and official capacity.

2

9.   The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

## **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

10.  On or about January 7, 2012 at approximately 7:30PM, the defendant officers, named and unnamed unlawfully arrested, detained and imprisoned the plaintiff.  That all criminal charges brought against the plaintiff was subsequently dismissed.

11.  Prior to and after effecting the unlawful arrest against the plaintiff, plaintiff had just returned home to find her front door/main entrance to her house open and defendants in her house.

12.  That as the plaintiff approached and entered her house, there were no officers by her front door or police barricades preventing plaintiff from entering her home.

13.  The plaintiff was not informed or instructed by any of the defendants that she was not allowed to enter her house.

14.  That the first encounter the plaintiff had with any of the defendants, occurred after plaintiff had already entered her house and was walking down the hallway to use her restroom/bathroom.

15.  That upon plaintiff seeing her front door open and entering into her house, she saw some of the named defendants in her house and began to enquire why they were in her house; to wit she received no response.  As she proceeded further into her house to use the bathroom and at the same time to see what the defendant officers were doing in the house, one of the defendant officers grabbed plaintiff from the back and violently slammed plaintiff against a wall.

16.  That the plaintiff, now in pain from being slammed against the wall started demanding that the defendants tell her why they were in her house and why they were slamming her against the wall.

17.  That defendants McDowell and Cracco, together with defendant Zambrano, then acted in concert in holding/pinning the plaintiff against the wall in her house while she was handcuffed.

18.  That defendants McDowell, Cracco, and Zambrano all participated collectively in physically arresting and handcuffing the plaintiff.

19.  That defendants McDowell, Cracco, and Zambrano, while acting in concert held on to plaintiff, while forcefully twisting and pushing plaintiff's arm upwards towards the back of plaintiff's head.

20. That while defendants McDowell, Cracco, and Zambrano were holding plaintiff, they also proceeded to search the plaintiff, inclusive of going through plaintiff's pockets, plaintiff's personal handbag and frisk searching plaintiff.

21. That in the process of searching the plaintiff, the defendants threw all of plaintiff's possession on the floor, breaking plaintiff's cell phone in the process.

22. That due to the excessive pain from plaintiff's arm being forced into an unnatural position and from being slammed into the wall so violently, plaintiff briefly lost consciousness.

23. The plaintiff was then carried/led by defendants McDowell and Zambrano and placed in a black police van, where she was detained for approximately 30 minutes before being driven to the 79th precinct and placed in a holding cell with her handcuffs still on.

24. That due to the tightness of the handcuffs, the plaintiff's hands became swollen and started turning blue.

25. That the handcuffs were eventually removed by an officer in the precinct and plaintiff returned to a holding cell, where she remained for several more hours.

26. Thereafter the plaintiff was placed in another police vehicle and transported to the Criminal Court Central Bookings Division in Brooklyn and placed in a holding pen, where plaintiff was again held for numerous hours, until the next day where she was brought before a judge and the case was adjourned in contemplation of dismissal.

27. That as a result of the actions of the defendant officers, the plaintiff remains traumatized, emotionally distressed and suffers frequently from nightmares, panic attacks, mental anguish, unwarranted severe anger bouts and severe pain in her wrists, left arm and shoulders.

28. That during the entire ordeal, plaintiff was not read her Miranda rights.

29. The decision to arrest the plaintiff was objectively unreasonable under the circumstances.

30. That after the plaintiff was arrested for various charges, including but not limited to the criminal possession of weapons, possession of a controlled substances, obstruction of governmental administration and other related charges, and was in the custody of the defendants, defendant Hirsch applied for a warrant to search plaintiff's house.

31. That the warrant to search plaintiff's son's room was issued several hours after plaintiff had already been arrested and was being detained by the defendants.

32. That the defendants were working collectively as a unit to

4

apprehend plaintiff and defendant McDowell was made the designated arresting officer for the arrest of plaintiff.

33. The unlawful arrest of plaintiff and unlawful detention thereafter was a collective effort of the defendants.

34. The named defendants individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

35. The factual claim by the defendant officers were materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it. These false claims included false claims by defendant McDowell as to what had transpired and the grounds for arresting plaintiff.

36. The named officers falsified information and forwarded these false allegations to the Kings County District Attorney ("KCDA") in order to justify the arrest and to persuade the KCDA to commence the plaintiff's criminal prosecution.

37. That as a direct result of these false allegations by the defendant officers the plaintiff was criminally charged under Docket Number 2012KN001989.

38. The plaintiff remained in the detention of the defendants for a second day, before the plaintiff was brought before a judge of the criminal court. That all charges were Adjourned in Contemplation of Dismissal and the plaintiff was released from the custody of the defendants.

39. At no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

40. That at no time did any defendant take any steps to intervene, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiff.

41. The defendant officers intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

42. As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer injuries, including but not limited to emotional distress, nightmares, and unwarranted severe anger bouts, pain in her wrists, left arm and shoulders some or all of which may be permanent.

43. The false arrest of plaintiff, plaintiff's wrongful imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional,

malicious, reckless and in bad faith.

44. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

45. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

46. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

47. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD, including the named defendants in this case.

48. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

49. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the

ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrest.

50. That all of the acts and omissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

51. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

52. In an Order dated November 25, 2009, in <u>Colon v. City of New York, 09 CV 0008 (EDNY)</u>, the court held that:

> *Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.*

53. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

54. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

55. The actions of all defendants, acting under color of State law, deprived plaintiff of her rights, privileges and immunities under the laws and Constitution of the United

States; in particular, the rights to be secure in her person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right to due process.

56. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

57. This action has been commenced within three years after the happening of the event upon which the claim is based.

58. Plaintiff was unlawfully arrested, detained and imprisoned by the defendant officers without any just cause and as a direct result of the defendant officers unlawful actions, plaintiff remains traumatized, emotionally distressed and suffers frequently from nightmares, panic attacks, mental anguish, unwarranted severe anger bouts and severe pain in her wrists, left arm and shoulders.

## AS A FIRST CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

59. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 58 of this complaint as though fully set forth herein.

60. The arrest, detention and imprisonment of plaintiff was without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

61. As a result of plaintiff's false arrest and imprisonment, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know her, plaintiff was prevented from attending to her necessary affairs, and have been caused to incur legal expenses, and have been otherwise damaged in her character and reputation.

62. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

63. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

64. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

8

## AS A SECOND CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: EXCESSIVE FORCE UNDER 42 U.S.C § 1983

65. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 64 of this complaint as though fully set forth herein.

66. The level of force employed by one or more of the defendant officers was objectively unreasonable and in violation of the plaintiff's constitutional rights.

67. As a result of the aforementioned conduct of the defendant officers, the plaintiff was subjected to excessive force, resulting in serious and severe physical injuries.

68. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered serious personal injuries, and her constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the defendant officers, individually and severally.

## AS A THIRD CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983

69. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 68 of this complaint as though fully set forth herein.

70. Following the plaintiff's arrest, the defendant officers searched and/or strip-searched and/or caused the plaintiff and/or her personal property to be searched and/or strip-searched, without any individualized reasonable suspicion that she was concealing weapons or contraband.

71. As a result of the foregoing, the plaintiff was subjected to an illegal and improper search and/or strip-search.

72. The foregoing unlawful search violated the plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

73. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against the defendant officers, individually and severally.

**AS A FOURTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983**

74. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 73 of this complaint as though fully set forth herein.
75. Each defendant officer had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to her constitutional rights, as more fully set forth above.
76. Each defendant officer failed to intervene on the plaintiff's behalf to prevent the violation of her constitutional rights, despite having had a realistic and reasonable opportunity to do so.
77. As a consequence of the defendant officers individual and/or collective actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, serious personal injuries, and her constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against the defendant officers, individually and severally.


**AS A FIFTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION/FALSIFICATION OF EVIDENCE**

78. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 77 of this complaint as though fully set forth herein.
79. The defendant officers individually and/or collectively created false evidence against the plaintiff.
80. The defendant officers individually and/or collectively forwarded false evidence and false information to the prosecutors in the Kings County District Attorney's office.
81. The defendant officers individually and/or collectively were directly involved in the initiation of criminal proceedings against the plaintiff.
82. The defendant officers individually and/or collectively lacked probable cause to initiate criminal proceedings against the plaintiff.
83. The defendant officers individually and/or collectively acted with malice in initiating criminal proceedings against the plaintiff.
84. The defendant officers individually and/or collectively misrepresented and falsified evidence throughout all phases

of the criminal proceeding.

85. The defendant officers individually and/or collectively misrepresented and falsified evidence to the prosecutors in the Kings County District Attorney's office.

86. The defendant officers individually and/or collectively withheld exculpatory evidence from the prosecutors in the Kings County District Attorney's office.

87. The defendant officers individually and/or collectively did not make a complete statement of facts to the prosecutors in the Kings County District Attorney's office.

88. By creating false evidence against the plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the defendant officers individually and/or collectively violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

89. As a consequence of the defendant officers' actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, and her constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

**AS AN SIXTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983**

90. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein.

91. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

92. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

93. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

94. The aforementioned customs, policies, usages, practices,

procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they Are/were involved in illegal vice transactions;

b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

95. The aforesaid event was not an isolated incident. The City of New York and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

96. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

97. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for

misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

98. Further, the City of New York and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

99. Additionally, according to a report of the New York City Bar Association issued in 2000, the City of New York and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

100. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

101. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

102. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a

deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

(a) The right of the plaintiff to be secure in her person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.
(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to her by the Fifth and Fourteenth Amendments to the Constitution of the United States.
(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.
(d) The right to be free from the use of excessive force.

103. As a result of the actions of the defendants, the plaintiff was deprived of her rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City of New York, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving her of her liberty without due process of law.

104. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages she suffered.

105. The actual principal/agent relationship between defendant City of New York and the defendant officers was created by the fact they were employees of defendant City of New York, and the City of New York had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

106. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against

14

the plaintiff were false and untrue.

**WHEREFORE,** plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial; and
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial; and
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and
4. For such other and further relief as the court deems proper.

Dated: May 21, 2014,
       Brooklyn, New York

O'keke& Associates, PC.

_____
Patrick O'keke, Esq. (PO-2861)
O'keke & Associates, PC.
Attorney for Plaintiff
801 Franklin Avenue
Brooklyn, New York 11238
Tel. (718) 855-9595

Civil Case Number:_ 12 CV 4390     Attorney: PATRICK O'KEKE [2861]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**                    **(RJD)(CLP)**

---

LINDA BUIE

                                        Plaintiff(s),

    against


THE CITY OF NEW YORK, DET.KEITH A.MCDOWELL(Shield# 1381), DET.
TODD CRACCO (Shield# 2359), DET. ORLEN ZAMBRANO (Shield# 02727),
and JOHN DOE and JANE DOE 1-2

                                        Defendant(s).

---

**AMENDED SUMMONS & AMENDED COMPLAINT**

**JURY TRIAL DEMAND**

---

**O'keke & Associates, PC**
801 FRANKLIN AVENUE, BROOKLYN NY, 11238
PHONE: (718) 855-9595  FAX: (718) 855-9494
EMAIL: polawuk@aol.com,

---

To:


Defendants/Attorney(s) For Defendants.

---

Service of a copy of the within is hereby admitted

                    Dated:_____

            Attorney(S) For:_____

---