UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
LINDA BUIE,

                          Plaintiff,                         **MEMORANDUM & ORDER**

            - against -                                      12 CV 4390 (RJD) (CLP)

CITY OF NEW YORK, et al.,

                          Defendants.
-------------------------------------------------------- x
DEARIE, District Judge

      Plaintiff brings this action, pursuant to 42 U.S.C. § 1983, against the City of New York

(the "City") and three detectives from the New York City Police Department ("N.Y.P.D."), Keith

McDowell, Todd Cracco, and Orlen Zambrano, for constitutional violations arising out of

plaintiff's arrest in her home on the evening of January 7, 2012. Despite significant disputes of

fact, defendants move for summary judgment. For the reasons discussed below, the Court grants

defendants' motion in part.

BACKGROUND

      The following are generally agreed-upon facts.[1]

      On January 7, 2012, at some point between 7:30 p.m. and 8:00 p.m., sixty-two year-old

Linda Buie returned to her home in Brooklyn, New York. Declaration of Curt P. Beck ECF

No. 78-3 [hereinafter Beck Decl.], Ex. J at 14:6-9 (Cracco deposition); id., Ex. L at 53:20-25

---

[1]     Defendants object to a number of plaintiff's responses in her Local Rule 56.1 statement (such as neither admitting nor denying statements or denying statements after altering them). To the extent that plaintiff has "denied statements for lack of 'knowledge and information,'" or through some other vague or unsupported response, those statements are "deemed admitted." Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005). However, "[w]here . . . the record does not support the [defendants'] assertions in [their] Local Rule 56.1 statement, those assertions [have] be[en] disregarded and the record reviewed independently." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).

(Zambrano deposition); <u>id.</u>, Ex. P at 22:2 (Buie deposition). As she neared, plaintiff saw that her elder son was being placed under arrest and the front door of her home was open. <u>Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1</u>, ECF No. 78-1 [hereinafter <u>Defs.' 56.1 Statement</u>] at ¶¶ 149, 152. Plaintiff then went into her building, the entrance of which was not blocked by any police officers or barriers. <u>Pl.'s Affirmation in Opposition to Defs.' Motion for Summary Judgment</u>, ECF No. 80 [hereinafter <u>Pl.'s Aff.</u>], Ex.10 at 58:10-25, 59:2 (Cracco deposition); <u>Beck Decl.</u>, Ex. K at 73:15-25, 74:2-19 (McDowell deposition). In the first floor hallway, plaintiff encountered detectives McDowell and Cracco arresting her neighbor and asked what they were doing in her home. <u>Beck Decl.</u>, Ex. J at 118:12-13, 122:2-24; <u>id.</u>, Ex. K at 73:9-14. At some point thereafter, plaintiff was handcuffed and fell to the ground. <u>Defs.' 56.1 Statement</u> at ¶¶ 1, 140; <u>Beck Decl.</u>, Ex. J at 138:2-9; <u>id.</u>, Ex. K at 128:24-25; <u>id.</u>, Ex. P at 80:14-25, 81:1; <u>Pl.'s Aff.</u>, Ex. 2 at ¶ 22 (Buie affidavit). Around this same time, plaintiff's younger son and grandson were arrested upstairs. <u>Defs.' 56.1 Statement</u> at ¶ 29.

Later that night, the N.Y.P.D. executed a warrant to search plaintiff's home. <u>Beck Decl.</u>, Ex. F (affidavit in support of application); <u>id.</u>, Ex. G (search warrant). Plaintiff was kept overnight and arraigned the next day on an obstruction of governmental administration charge but accepted an adjournment in contemplation of dismissal. <u>Defs.' 56.1 Statement</u> at ¶¶ 5-6; <u>Reply Declaration of Curt P. Beck</u>, ECF No. 83-1, Ex. A at 167:6-23 (Buie deposition). Plaintiff's elder son later pled guilty to a misdemeanor drug possession charge. <u>Pls.' Aff.</u>, Ex. 2 at ¶ 41.

Two days later, plaintiff went to see a doctor, stating that she had been assaulted by the police and had muscle pain. <u>Defs.' 56.1 Statement</u> at ¶¶ 110, 113; <u>Beck Decl.</u>, Ex. O (medical

records). The doctor observed no bruises or signs of distress but nonetheless gave plaintiff a shot of pain reliever. <u>Defs.' 56.1 Statement</u> at ¶¶ 128-32, 135; <u>Beck Decl.</u>, Ex. O (medical records).

The remaining details are contested.

A. <u>Defendants' Narrative</u>

According to defendants, this series of events began with a buy-and-bust. <u>Beck Decl.</u>, Ex. J at 73:9-14. Plaintiff's elder son took part in a drug transaction with an undercover officer, using plaintiff's home as his base. <u>Id.</u>, Ex. J at 77:11-17, 115:23-25, 116:2-19. After this transaction, members of the police team approached the house. <u>Id.</u>, Ex. J at 116:20-25, 117:2-5. Through the open door, they saw plaintiff's neighbor in possession of crack cocaine and entered the home to arrest her. <u>Id.</u>, Ex. J at 113:19-25, 114:2-17, 117:6-10. Once inside, two members of the police team went upstairs, where they arrested plaintiff's younger son and grandson. <u>Id.</u>, Ex. J at 15:2-9; <u>id.</u>, Ex. K at 75:24-25, 76:2-5, 81:18-21.

When plaintiff first entered her home, Cracco was arresting her neighbor in the first floor hallway and McDowell was just entering the building. <u>Id.</u>, Ex. J at 122:2-24; <u>id.</u>, Ex. K at 73:12-14. Plaintiff shouted at the officers, asking what they were doing in her home. <u>Id.</u>, Ex. J at 118:12-13, 121:22-25, 122:2-24. McDowell responded that the police were conducting an investigation and plaintiff would have to leave the building. <u>Id.</u>, Ex. J at 122:8-20; <u>id.</u>, Ex. K at 74:22-25, 75:2. Plaintiff left but returned shortly thereafter, while Cracco and McDowell were securing her neighbor. <u>Id.</u>, Ex. J at 126:10-24, 134:2-25; <u>id.</u>, Ex. K at 80:19-25, 81:2-17. At this point, either Cracco or McDowell handcuffed and arrested plaintiff. <u>Id.</u>, Ex. J at 14:10-18, 16:7-14, 137:2-9; <u>id.</u>, Ex. K at 77:5-15. No force was used to effect the arrest, and plaintiff was not searched. <u>Pl.'s Aff.</u>, Ex. 10 at 135:5-14; <u>Beck Decl.</u>, Ex. K at 126:13-25, 127:2-25, 128:2-21.

However, the detectives acknowledge that, at some point during this arrest, plaintiff "flopped to the ground." Id., Ex. J at 138:2-9; id., Ex. K at 128:24-25.

Zambrano was outside in the police van at the time of plaintiff's arrest and never entered plaintiff's home.[2] Id., Ex. L at 53:20-25, 54:1-7 (Zambrano deposition). His only interaction with plaintiff was to drive her to the precinct. Id., Ex. L at 56:1-9.

A later search of the home revealed crack cocaine, marijuana, a pistol, ammunition, drug paraphernalia, and $582 in cash. Id., Ex. E (property clerk invoice).

B.  Plaintiff's Narrative

According to plaintiff, as she approached her home, she witnessed her elder son being arrested on the street corner. Pl.'s Aff., Ex. 2 at ¶ 7 (affidavit); id., Ex. 7 at 139:11-16. Plaintiff continued down the block to her building where she saw that her front door was open. Id., Ex. 2 at ¶ 12; id., Ex. 8 at 270:11-13. When plaintiff entered and encountered Cracco and McDowell, she asked them what they were doing in her home and, receiving no response, continued inside.[3] Beck Decl., Ex. P at 79:18-20, 80:6-16. At this point, Zambrano came in from behind plaintiff and slammed her against the wall.[4] Beck Decl., Ex. P at 80:14-25; Pl.'s Aff., Ex. 2 at ¶ 16.

---

[2]     Zambrano testified that plaintiff was already arrested by the time he arrived but admitted that he picked up one male, presumably plaintiff's elder son, at 7:55 p.m. on the corner next to plaintiff's home. Beck Decl., Ex. M at ¶¶ 10-11 and Ex. A. The parties have consistently disagreed as to the timing of the arrests, with defendants asserting that plaintiff was arrested around 8:00 p.m. Therefore, by defendants' own account, Zambrano was in the vicinity of plaintiff's home by the time of her arrest.

[3]     Plaintiff testified without names, referring only to a white and a black officer. Beck Decl., Ex. P at 23:3-6, 79:18-20. Plaintiff later submitted an affidavit, naming Cracco, who is white, and McDowell, who is black. Pl.'s Aff., Ex. 2 at ¶ 15; Defs.' 56.1 Statement at ¶¶ 37, 54.

[4]     Again, plaintiff testified without names, referring to this detective as a "Mexican" officer. Beck Decl., Ex. P at 23:3-9; 80:18-25. She later submitted an affidavit, naming Zambrano, who is part Japanese and part Ecuadorian. Pl.'s Aff., Ex. 2 at ¶ 59; Beck Decl., Ex. L at 59:15-20.

Cracco and McDowell then assisted Zambrano as all three detectives pushed plaintiff's arms upwards, pressed her face against the wall, and searched her person.[5] Beck Decl., Ex. P at 80:14-25; Pl.'s Aff., Ex. 2 at ¶¶ 16, 18-19. Being forced into this position triggered a great amount of pain in plaintiff's arms, back, neck, and shoulder area, causing her to pass out. Beck Decl., Ex. P at 80:14-25, 81:1; Pl.'s Aff., Ex. 2 at ¶¶ 17, 22. When she came to, the detectives were holding her up and escorting her to the police van. Pl.'s Aff., Ex. 2 at ¶ 23.

Plaintiff denies that there were any drugs or weapons in the residence at the time of her arrest. Pl.'s Statement of Material Facts Pursuant to Local Rule 56.1, ECF No. 80-22, at ¶¶ 20-21, 40, 50. She concedes that her doctor did not find any bruises but insists that she felt and still feels muscle pain in the areas strained by her arrest. Id. at ¶ 128; Pl.'s Aff., Ex. 2 at ¶¶ 44-45.

<u>PROCEDURAL HISTORY</u>

The amended complaint pleads six claims against the City and the three detectives for constitutional violations arising out of plaintiff's arrest: (1) a federal and state false arrest claim; (2) a federal unlawful search claim; (3) a federal excessive force claim; (4) a federal failure to intervene claim; and (5) a federal denial of fair trial claim.[6] ECF No. 52. Despite the extensive factual disputes, defendants move for summary judgment on all of plaintiff's claims on the grounds that the detectives had probable cause to arrest her and did not use force. Alternatively, defendants argue that the detectives are entitled to qualified immunity. Defendants also accuse plaintiff of submitting a "sham affidavit."

---

[5] This conflicts with plaintiff's testimony, in which she stated only that the white officer assisted Zambrano. Beck Decl., Ex. P at 80:18-20; Pl.'s Aff., Ex. 8 at 278:13-24.

[6] The amended complaint also pleads a Monell claim against the City, but plaintiff conceded in her motion papers that she did not attain sufficient evidence to support this claim.

<u>DISCUSSION</u>

Summary judgment is appropriate where "the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and citation omitted); <u>see also</u> Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Windsor v. United States</u>, 699 F.3d 169, 192 (2d Cir. 2012) (internal quotation marks, alteration, and citation omitted).

A.     <u>Sham Affidavit</u>

As an initial matter, defendants accuse plaintiff of submitting a sham affidavit in order to survive their summary judgment motion. It is well settled in this Circuit "that '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting h[er] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" <u>Palazzo ex rel. Delmage v. Corio</u>, 232 F.3d 38, 43 (2d Cir. 2000) (quoting <u>Perma Research & Dev. Co. v. Singer Co.</u>, 410 F.2d 572, 578 (2d Cir. 1969)). However, this so-called "sham affidavit" principle does not apply where the affidavit (1) "addresses an issue that was not, or was not thoroughly or clearly, explored in the deposition," or (2) is corroborated by other evidence. <u>Id.</u> (collecting cases).

Many of the so-called "contradictions" between plaintiff's affidavit and her testimony go more to the reliability of plaintiff as a witness than to the genuineness of any material factual disputes. For example, while defendants are correct that plaintiff was previously unable to

identify any of the officers involved in her arrest, she did provide ethnicities for the officers that match those of the defendants. Furthermore, although plaintiff's affidavit adds a fair amount of color to her claims, this detail was hardly necessary to create a genuine issue of material fact on plaintiff's surviving claims.

One of the inconsistencies between plaintiff's deposition testimony and her affidavit is more substantial. Plaintiff's affidavit states for the first time that McDowell physically participated in her arrest. This addition is notable, especially given the great extent to which plaintiff was deposed on her arrest and the participants therein. But defendants, themselves, provided corroborating evidence admitting that McDowell was at least present for the arrest.[7]

On balance, after reviewing plaintiff's deposition—during which she clearly struggled but nonetheless managed to set forth the basic facts of her surviving claims—the Court readily concludes that while the affidavit may undermine her credibility before the jury it is of no real consequence in the Court's determination of the motion.

B.    <u>False Arrest</u>

To prevail on her claims for false arrest under federal and state law, plaintiff must show, *inter alia*, that defendants intentionally arrested her without justification. <u>See</u> <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). Defendants maintain that the arrest was justified.

First, defendants argue that seizure of the home and its occupants was reasonable. To determine the reasonableness of the seizure of a residence prior to obtaining a search warrant, courts must balance the following four factors: "(1) whether the police had probable cause to believe that the home contained evidence of crime or contraband; (2) whether the police had good reason to fear that, absent restraint, evidence would be destroyed before they could return

---

[7]    Both Cracco and McDowell testified that the two of them were in the hallway for at least part of plaintiff's arrest and that they saw plaintiff fall to the ground during her arrest.

with a warrant; (3) whether 'the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy'; and (4) whether the 'time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant.'" Cucuta v. New York City, 25 F. Supp. 3d 400, 411 (S.D.N.Y. 2014) (quoting Illinois v. McArthur, 531 U.S. 326, 331-33 (2001)).

Defendants claim that the officers had probable cause to believe that plaintiff's home contained evidence of her son's drug sale, which may have been destroyed if the home's occupants had been permitted "to remain inside . . . unobserved while aware of the law enforcement investigation." See i.d. at 411-13 (finding reasonable the seizure of apartment of a suspect's girlfriend where suspect, who sold crack cocaine to undercover police officers, told officers he was staying at the apartment and officers suspected he may be keeping drugs there). This line of argument is developed from Illinois v. McArthur, in which the Supreme Court held that the seizure of a suspect's trailer home was not unreasonable where police officers had been told by the suspect's wife that he had hidden marijuana in his home. 531 U.S. at 331-32.

However, though both McArthur and Cucuta justify the temporary seizure of plaintiff's *home* under the facts defendants describe, neither supports the forcible arrest and overnight jailing of a homeowner returning to the premises before the officers had obtained their search warrant. See McArthur, 531 U.S. at 332 (noting that "the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy" by not arresting the suspect before obtaining a warrant and instead "impos[ing] a *significantly less restrictive restraint*," of merely "preventing [the suspect] . . . from entering [his] trailer unaccompanied") (emphasis added); Cucuta, 25 F. Supp. 3d at 413 (stating that the court was not required to consider the personal privacy interests of the apartment's occupants because they were not

parties to the action); see also United States v. Watson, 703 F.3d 684, 693-94 (4th Cir. 2013) (finding unreasonable the three hour detention of criminal defendant in building open to the public while officers sought a search warrant, where officers had observed a drug transaction near the building but had no information linking defendant to the criminal activity); Briddell v. Chester, 206 F. Supp. 2d 733, 736-38 (D. Md. 2002) (finding reasonable the five hour seizure of a home owned by a drug suspect's mother while officers sought a warrant but noting that the woman had been free to leave the house and use the phone). In fact, "each of the reasons justifying the police conduct in McArthur is either absent here or weighs against a conclusion that the officers reasonably seized and detained [plaintiff]." Watson, 703 F.3d at 692. The restraint in McArthur "was different in both character and duration" than the forcible arrest of the sixty-two year-old mother of a drug suspect in this case and was based on a stronger "connection between the [plaintiff] and the contraband that was the subject of the search warrant application." Id.

As an alternative, defendants argue that they had probable cause to arrest plaintiff. "Probable cause is determined on the basis of facts 'known to the arresting officer at the time of the arrest,'" Shamir v. City of New York, -- F.3d --, 2015 WL 6214708, at *4 (2d Cir. 2015) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)), judged against the "totality of the circumstances," Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (internal quotation marks and citation omitted). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (internal quotation marks and citation omitted). The information required "need not reach the level of evidence

necessary to support a conviction . . . but it must constitute more than rumor, suspicion, or even a strong reason to suspect." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (internal quotation marks and citations omitted).

Defendants argue that they had probable cause to arrest plaintiff for (1) constructive possession of the visible drugs in the home because plaintiff claimed ownership of the home when she asked the officers what they were doing in *her* house, or (2) obstructing governmental administration, because plaintiff reentered the home after being given clear instructions to stay outside. However, genuine issues of material fact preclude the Court from determining as a matter of law that probable cause existed.[8]

Nonetheless, plaintiff's state law false arrest claim against the City must be dismissed for plaintiff's failure to attend the hearing required by New York General Municipal Law § 50(h).[9] Plaintiff claims that she never received notice of the hearing because it went to her previous attorney. However, the record does not show any attempt by plaintiff's new attorney to arrange a 50(h) hearing. "Although the Second Circuit has not definitively decided the issue, courts have placed the burden on the plaintiff to resolve any discrepancies regarding the rescheduling of a [50(h) hearing] in accordance with the Second Circuit's directive to construe [state] [n]otice of [c]laim requirements 'strictly.'" Gilliard, 2013 WL 521529 at *16 (collecting cases) (noting that "[d]isregarding any proffered reason is . . . good policy" because "the City must handle the

---

[8]     Defendants argue plaintiff has no basis to deny that the officers found drugs in her home while she was out. However, plaintiff was arrested before the search warrant was procured and at the same time as the officers who had arrested her son and grandson returned from upstairs. Thus, the only drugs in the home known to her arresting officers by the time of plaintiff's arrest would have been openly visible to plaintiff, as well as the officers.

[9]     Contrary to defendants' assertions, "failure to comply with section [50(h)] precludes only claims against the City, not employees who are sued in their individual capacities alongside the City." Gilliard v. City of New York, No. 10-CV-5187 (NGG) (CLP), 2013 WL 521529, at *15 n.19 (E.D.N.Y. Feb. 11, 2013); see also N.Y. Gen. Mun. L. § 50(h).

rescheduling of thousands" of 50(h) hearings, whereas "plaintiff is only concerned with her

own"). Therefore, plaintiff's failure to attend the requisite 50(h) hearing, "no matter the reason,"

is a "complete bar" to her state law false arrest claim against the City. Id.

Accordingly, the Court denies defendants' motion for summary judgment on plaintiff's

federal and state false arrest claims, except that the Court dismisses plaintiff's state law false

arrest claim against the City for failure to attend the requisite 50(h) hearing.

C.     Unlawful Search

Defendants argue that any search of plaintiff's person was proper as a search incident to

her lawful arrest. Because there are disputes of fact as to whether defendants had probable cause

to arrest plaintiff, this argument fails. Therefore, the Court denies defendants' summary

judgment motion on plaintiff's unlawful search claim as to any search of plaintiff's person.

As for any search of plaintiff's home, plaintiff has provided no evidence—and cannot

testify from personal knowledge—to refute defendants' claims that her elder son had engaged in

a drug transaction with an undercover officer somewhere on her street and that the officers

suspected there may be more drugs in the residence.[10] Even assuming, as plaintiff claims, that the

officers could not see plaintiff's neighbor or any drugs through the front door, the nearby drug

transaction involving plaintiff's son would be sufficient under McArthur and Cucuta to justify a

temporary seizure of the residence while the N.Y.P.D. sought a search warrant. 531 U.S. at 331-

32; 25 F. Supp. 3d at 411-13. And the record contains no evidence that defendants searched

plaintiff's house before the warrant had been signed, that the wait for the warrant was

unreasonably long, or that the warrant was not valid. See Cucuta, 25 F. Supp. 3d at 411-13

(finding reasonable the five hour seizure of apartment of drug suspect's girlfriend). Furthermore,

---

[10]     Notably, the record contains no testimony from plaintiff's sons or grandson. And
plaintiff's elder son pled guilty to a misdemeanor drug possession charge.

other than plaintiff's bald allegation in one sentence of her affidavit, the record contains no evidence that the search of plaintiff's home resulted in damage to her property.

Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's unlawful search claim as to the search of plaintiff's home.

D.     Excessive Force

Excessive force claims stemming from an arrest invoke the Fourth Amendment's protection against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394 (1989).  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham, 490 U.S. at 397). This inquiry "requires a careful balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake," including consideration of the following three factors: (1) the "severity of the crime," (2) "whether the suspect poses an immediate threat to the safety of the officer or others," and (3) "whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation marks omitted) (quoting Graham, 490 U.S. at 396).

Because "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates . . . the Fourth Amendment," courts are instructed to evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (internal quotation marks and citation omitted). However, "[d]efendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that [a] [p]laintiff may not have sustained serious long lasting

harm is not dispositive." <u>Graham v. City of New York</u>, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013) (collecting cases).

Defendants principally contend that plaintiff's injuries are *de minimis* and do not rise to the level of a constitutional violation. This Court disagrees.

First, as discussed further below, plaintiff provided sufficient descriptions of the arresting officers—combined with defendants' admissions that they were at or near the scene—to allow a reasonable jury to conclude that each individually named defendant either (1) directly participated in plaintiff's forcible arrest or (2) was present and had a reasonable opportunity to intervene after Zambrano slammed plaintiff into the wall. <u>See</u> <u>Corley v. Shahid</u>, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015) (discussing requirements for personal involvement in use of excessive force).

Second, the Court does not agree that plaintiff's alleged injuries are *de minimis* and do not rise to the level of a constitutional violation. Viewed in the light most favorable to plaintiff, the most that defendants knew was that she was the owner of a home being investigated in connection with a drug transaction. Nonetheless, according to plaintiff, Zambrano grabbed this sixty-two year-old grandmother from behind (without first warning her that her home was under investigation or instructing her to leave) and slammed her into a wall. All three detectives then pushed plaintiff's arms upwards and pressed her face into the wall, causing plaintiff to pass out.

Considering the totality of circumstances, a reasonable jury crediting plaintiff's description of the arrest could find that the defendants' decision to use such aggressive tactics was objectively unreasonable and that some lesser degree of force would have been appropriate. <u>See</u> <u>Sash v. United States</u>, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) (finding that "[t]ackling an arrestee on the street and forcibly shoving him into a metal gate when he offer[ed] no resistance

certainly could be actionable conduct") (collecting cases). Moreover, even if plaintiff is required to show some threshold of injury, she has done so, at least sufficiently for nominal damages. See id. at 540 (upholding excessive force claim where plaintiff, who stated that he had pain in his neck and back, "lack[ed] [the] physical evidence, such as scraping or bruising, typically associated with the application of force") (collecting cases). Furthermore, while it is true that plaintiff's evidence is thin—consisting primarily of her own testimony—Cracco and McDowell both admitted to seeing plaintiff fall to the ground while she was being handcuffed, thereby corroborating at least a portion of plaintiff's account. See id. at 541 (declining to engage in credibility assessment on plaintiff and arresting officers' conflicting testimonies).

Accordingly, the Court denies defendants' motion for summary judgment on plaintiff's excessive force claim.

E.     Failure to Intervene

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know (1) that excessive force is being used, . . . (2) that a citizen has been unjustifiably arrested, . . . or (3) that any constitutional violation has been committed by a law enforcement official . . . ." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id.

Defendants' argue that plaintiff cannot establish a violation of any constitutional right. However, there is a dispute of material fact as to whether defendants' falsely arrested, unlawfully

searched, and used excessive force on plaintiff. Therefore, plaintiff's failure to intervene claim "cannot be dismissed on this ground." Richardson v. Providence, No. 09-CV-4647 (ARR) (LB), 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012).[11] And while the initial use of force—in which plaintiff claims that Zambrano slammed her into a wall—happened too quickly for intervention, a reasonable jury could conclude that each of the individually named defendants had time to intercede and were capable of preventing some of the harm caused. Anderson, 17 F.3d at 557; see also O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (rejecting failure to intervene argument where "three blows were struck in such rapid succession that [the nearby defendant] had no realistic opportunity to attempt to prevent them" but finding issue of fact as to whether defendant could have stopped "the subsequent dragging of [plaintiff] across the floor").

Accordingly, defendants' motion for summary judgment on plaintiff's failure to intervene claim is denied.

F.    Denial of Fair Trial

A plaintiff establishes a denial of fair trial claim when a police officer (1) "creates false information *likely to influence a jury's decision*," (2) "forwards that information to prosecutors," and (3) the plaintiff is deprived of her liberty as a result.[12] Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) (emphasis added); see also Jovanovic v. City of New York, 486 Fed. App'x. 149, 152 (2d Cir. 2012) (unpublished). Defendants argue that plaintiff failed to show that the detectives fabricated any evidence, much less *admissible* evidence likely to influence a

---

[11]    The Court also rejects defendants' argument that plaintiff abandoned her failure to intervene claim through inadequate briefing, because the brief contains a cognizable argument.

[12]    "[C]ourts in this Circuit . . . have ruled that a plaintiff's accepting an [adjournment in contemplation of dismissal] does not preclude a fair trial claim." Apostol v. City of New York, No. 11-CV-3851 (RRM) (CLP), 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014) (collecting cases); see also Horvath v. City of New York, No. 12-CV-6005 (RJD) (JMA), 2015 WL 1757759, at *6 (E.D.N.Y. Apr. 17, 2015) ("A plaintiff asserting a fair trial claim need not show he was convicted or that the case even went to trial.").

jury. Plaintiff argues that McDowell signed a criminal complaint falsely asserting, upon information given to him by Cracco, that plaintiff was arrested because she pushed Cracco while he was arresting her neighbor. Pl.'s Aff., Ex. 3 (criminal complaint).

As an initial matter, there is no record evidence that Zambrano was involved in preparing the criminal complaint, and accordingly, summary judgment in favor of Zambrano is appropriate on this basis alone. See Struthers v. City of New York, No. 12-CV-242 (JG), 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013).

For the remaining defendants, in order to establish the first element of her denial of fair trial claim, plaintiff must show that Cracco and McDowell "create[d] false information" in the criminal complaint that was "likely to influence a jury's decision." Ricciuti, 124 F.3d at 130 (concluding that a reasonable jury could find that the defendant officers had violated plaintiff's right to a fair trial "by conspiring to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict"). However, "plaintiff's ability to recover for violations of h[er] right to a fair trial is hindered by the common law doctrine that shields witnesses, including officers, in a cloak of absolute immunity for their testimony in judicial proceedings." Horvath, 2015 WL 1757759 at *7 (citing Rehberg v. Paulk, -- U.S. --, 132 S.Ct. 1497, 1507, 1510 (2012), Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983), and Jovanovic, 486 Fed. App'x at 152). Plaintiff seeks to circumvent the rule of absolute immunity by claiming that the criminal complaint contains fabricated evidence, which courts in this Circuit have frequently held—without addressing admissibility—is sufficient to form the basis of a denial of fair trial claim. See, e.g., Brown v. City of New York, No. 08-CV-5095 (FB) (MDG), 2013 WL 1338785, at *6 (E.D.N.Y. Apr. 1, 2013) (denying summary judgment because issue of fact as to whether criminal complaint contained fabricated evidence); Struthers, 2013 WL 2390721 at *13 (same).

In Jovanovic, an unpublished summary order, the Second Circuit affirmed summary judgment in favor of a defendant police officer—accused of lying in his grand jury testimony—for lack of *causation* "because *the only avenue by which the testimony could [have] reach[ed] the jury* was through [the officer]'s testimony, for which he enjoy[ed] absolute immunity . . . ." 486 Fed. App'x. at 152 (emphasis added). Some district courts have interpreted this statement as providing that allegedly falsified evidence itself must be admissible. See, e.g., Brown v. City of New York, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at *9-10 (E.D.N.Y. Dec. 23, 2014) (dismissing fair trial claim because the false statements, including those made in a criminal complaint, were inadmissible hearsay). Other district courts, however, have argued that the phrase "likely to influence a jury's decision" refers to the "materiality of the information," not its "likel[ihood] to be presented to a jury" in admissible form. Garnett v. Undercover Officer C0039, No. 13-CV-7083 (GHW), 2015 WL 1539044, at *8 (S.D.N.Y Apr. 6, 2015) (citing Ricciuti 124 F.3d at 130); see also Rucks v. City of New York, -- F. Supp. 3d. --, 2015 WL 1433383, at *10 (S.D.N.Y. 2015) (arguing that "both the Supreme Court and the Second Circuit . . . have declined to endorse" an admissibility requirement because they maintained or discussed claims against officers who had falsified evidence inadmissible at trial) (citing Rehberg, 132 S.Ct. at 1507 n.1 and Coggins v. Buonora, 776 F.3d 108, 113 (2d Cir. 2015)).

This Court is reluctant to adopt a hard line rule that a plaintiff may never bring a denial of fair trial claim where the allegedly falsified evidence is inadmissible. See Horvath, 2015 WL 1757759 at *7 (dismissing fair trial claim in part because "the allegedly false statements by defendants to the district attorney" were inadmissible hearsay but also noting these statements were likely entitled to absolute immunity). But though the Court agrees with Judge Woods that "likely to influence a jury's decision" refers to the materiality of the allegedly false information,

Garnett, 2015 WL 1539044, at *8, the Court considers the admissibility of this information as an important factor in in the materiality assessment. For instance, fabricated confessions, like in Ricciuti, and physical evidence are "almost certain to influence a jury's verdict," not merely because they are potent proof of wrongdoing but also because such pieces of evidence are virtually guaranteed to make it to a jury table during deliberation. Ricciuti, 124 F.3d at 130; see also Brown, 2014 U.S. Dist. LEXIS 181736, at *9 (noting that a fabricated confession "would most certainly have been admissible at trial under the rules of evidence as an admission" and thereby influenced the jury's verdict). Meanwhile, inadmissible statements made to prosecutors orally, in police reports, and in criminal complaints, though they raise similar concerns about the credibility of police work, do not equally corrupt "the truth-seeking function of the trial process," because they have no direct avenue by which to reach a jury. Ricciuti, 124 F.3d at 130 (internal quotation marks and citation omitted).

Other factors in a court's materiality assessment include whether the false statements are entitled to absolute immunity, see Horvath, 2015 WL 1757759, at *7, and whether these statements "laid the groundwork" for plaintiff's deprivation of liberty, Coggins, 776 F.3d at 113 (affirming denial of absolute immunity to officer on malicious prosecution claim and noting that the claim was based on "conduct that laid the groundwork for [plaintiff]'s indictment"); see also Jovanovic, 486 Fed. App'x at 152 (stating that the allegedly false grand jury testimony was entitled to absolute immunity and distinguishing this result from Ricciuti by noting that the allegedly fake admissions in that case were "willfully fabricated" and "caused the plaintiffs to be charged with a more serious crime and delayed their opportunity to be freed on bail"). For example, in Jones v. City of New York, Judge Gleeson noted that officers' allegedly false statements to the district attorney that they had conducted a show-up were "insufficiently

material" to sustain a denial of fair trial claim because the statements were not only inadmissible but also redundant to the other identifications of the criminal defendant in that case. No. 12-CV-3658 (JG), 2013 WL 6047567, at *10 (E.D.N.Y. Nov.14, 2013) (noting that this other evidence "would render evidence of the allegedly fabricated show-up essentially immaterial"), vacated on other grounds, 603 Fed.App'x. 13 (2d Cir. Mar. 4, 2015). Conversely, in Jean-Laurent v. Bowman, Judge Matsumoto found that a plaintiff "need not demonstrate that [an officer's] purportedly false statements would reach a jury" for procedural due process claim because he had shown that "the alleged fabrications [we]re central to the question of whether [the officer] had probable cause to arrest plaintiff" and thus "led to his brief pre-trial detention." No. 12-CV-2954 (KAM) (LB), 2014 WL 4662232, at *3 n.1 (E.D.N.Y. Sept. 18, 2014) (citing Jovanovic, 486 Fed. App'x 152).

Accordingly, while the precise contours of this largely superfluous claim have yet to be scripted, the Court concludes that the allegedly false statements in the criminal complaint are sufficient for a reasonable jury to find that plaintiff was denied a fair trial. The criminal complaint, itself, is inadmissible, and any evidence to support the accusations therein would be limited to the defendants' immunity-cloaked testimony. However, the allegedly false statements in the criminal complaint—that plaintiff pushed Cracco while he was trying to arrest her neighbor—were the very heart of the obstruction of governmental administration charge on which plaintiff was arrested and detained overnight.

Accordingly, defendants' motion for summary judgment on plaintiff's denial of fair trial claim is denied as to Cracco and McDowell but granted as to Zambrano.

G.   Qualified Immunity

The "contrasting accounts" of the circumstances surrounding plaintiff's arrest create a dispute as to the objective reasonableness of her arrest and search, including the amount of force employed therein and the subsequent drafting of the criminal complaint. Kerman v. City of New York, 261 F.3d 229, 239-40 (2d Cir. 2001) (noting "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness") (internal quotation marks and citation omitted). A reasonable jury, if it credited plaintiff's account of what happened on the night in question, could find that defendants' conduct violated federal rights that were "clearly established" at the time. Tolan v. Cotton, -- U.S. --, 134 S.Ct. 1861, 1865-66 (2014) (per curiam) (articulating the "two-pronged inquiry" for "resolving questions of qualified-immunity at summary judgment").

Therefore, the Court denies defendants' motion for summary judgment on the basis of qualified immunity.

CONCLUSION

For the reasons stated above, the Court grants defendants' summary judgment motion in part. Defendants' summary judgment motion is granted—as to all defendants—on plaintiff's unlawful search claim, to the extent plaintiff claims defendants searched her home. Additionally, plaintiff's state false arrest claim against the City is dismissed for failure to attend the requisite 50(h) hearing. And defendants' summary judgment motion is granted—as to Zambrano—on plaintiff's denial of fair trial claim.

However, defendants' summary judgment motion is denied—as to all defendants—on plaintiff's (1) federal false arrest claim, (2) unlawful search claim, to the extent plaintiff claims defendants searched her person, (3) excessive force claim, and (4) failure to intervene claim.

Additionally, defendants' summary judgment motion is denied—as to all individually named defendants—on plaintiff's state false arrest claim. And defendants' summary judgment motion is denied—as to Cracco and McDowell—on plaintiff's denial of fair trial claim. Furthermore, the Court concludes that the individually named defendants are not entitled to summary judgment on plaintiff's surviving claims on the basis of qualified immunity.

Plaintiff's <u>Monell</u> claim is dismissed on consent.


SO ORDERED.

Dated: Brooklyn, New York
        October 30, 2015

                                        /s/ Judge Raymond J. Dearie
                                        _____
                                        RAYMOND J. DEARIE
                                        United States District Judge